## E. D. FYKE V. THE STATE.

### No. 3980. Decided March 15, 1916.

**1.—Illegally Practicing Medicine—Indictment—Negativing Exceptions.**

Where, upon trial of illegally practicing medicine by unlawfully prescribing morphine, under article 748, Penal Code, the indictment did not negative the exception in the statute, there was no error in overruling the motion to quash the indictment on that ground. Davidson, Judge, dissenting.

**2.—Same—Evidence—Curing Morphine Habit—Gradual Decrease of Dose.**

Where defendant was tried for unlawfully prescribing morphine to an habitual user of morphine, contrary to article 748, Penal Code, he should have been permitted to show that he cured his patient of the morphine habit, by decreasing the doses of morphine gradually until it altogether ceased under his treatment.

**3.—Same—Medical Treatment—Morphine Habit—Charge of Court.**

Where defendant was charged with unlawfully prescribing morphine to an habitual user of said drug, and it was shown that he administered this drug for relieving, for the time being, his patient's suffering in the course of the treatment, and that his treatment was legitimate and proper, the court should have charged the jury that this was no violation of the law, instead of charging the converse of the proposition; the evidence showing that the defendant treated his patient not only for the habit of using morphine, but for other ailments.

**4.—Same—Statutes Construed—Legitimate Practice of Physician—Charge of Court.**

The statute only intended to prevent the prescribing of morphine to a party addicted to the morphine habit, and not to prevent lawful practitioners of medicine from administering morphine if necessary in the treatment of the disease from which a patient is suffering, or to relieve him from pain at the time, and if defendant administered morphine to his patient who was suffering at the time with peritonitis and abscesses, etc., or if he gave the drug for curing his patient of the habit, he was not guilty of violating the statute, and the court should have so charged the jury.

Appeal from the County Court of Tarrant. Tried below before the Hon. Jesse M. Brown.

Appeal from a conviction of unlawfully administering morphine to an habitual user of said drug; penalty, a fine of $50.

The opinion states the case.

*Baskin, Dodge, Baskin & Eastus,* for appellant.—On question of insufficiency of the indictment: Brown v. State, 74 Texas Crim. Rep., 498, 168 S. W. Rep., 861, and cases cited in opinion.

*C. C. McDonald,* Assistant Attorney General, and *Marshall Spoonts,* County Attorney, for the State.—On question of sufficiency of the in-

dictment: Slack v. State, 61 Texas Crim. Rep., 372; Bell v. State, 62 Texas Crim. Rep., 242, 137 S. W. Rep., 670; Brown v. State, 74 Texas Crim. Rep., 498, 168 S. W. Rep., 861.

DAVIDSON, JUDGE.—The indictment charges appellant, under article 748 of the Penal Code, with being then and there a lawfully authorized practitioner of medicine, and, as such, did then and there unlawfully prescribe morphine for the use of Maud Smith, who was then and there an habitual user of morphine, contrary to the statutes, etc. That article provides that it shall be unlawful for any practitioner of medicine, dentistry or veterinary medicine to furnish to, or prescribe for the use of, any habitual user of the same, any cocaine or morphine, or any salts or compound of cocaine or morphine, or any preparation containing cocaine or morphine or their salts, or any opium or chloral hydrate, or any preparation containing opium or chloral hydrate, etc., "provided, however, that the provisions of this section shall not be construed to prevent any lawfully authorized practitioner of medicine from prescribing in good faith for the use of any habitual user of narcotic drugs such substances as he may deem necessary for the treatment of such habit."

Various objections are urged to the sufficiency of this indictment, all growing out of and incidental to the proviso above quoted. The indictment does not set out the proviso, or negative the fact that he was treating the woman for the morphine habit. The writer believes the indictment insufficient under the following authorities: Blair v. State, 96 S. W. Rep., 23; Blair v. State, 97 S. W. Rep., 89; Brown v. State, 74 Texas Crim. Rep., 498, 168 S. W. Rep., 861; United States v. Carney, 228 Fed Rep. (advance sheet No. 2, February 10, 1916), 163. The majority of this court, however, do not agree with the writer, and think the indictment is sufficient, and that it is not necessary to negative this proviso in the indictment. The writer does not care to discuss the matter inasmuch as it would be unnecessary in view of the fact that the majority of this court does not agree with his views. It will be observed from a casual reading of article 748 of the Penal Code that its denunciations are leveled at practitioners or prohibits practitioners from administering morphine to habitual users of that drug or any of the drugs mentioned. It is also discernible on the face of the statute that it was not intended to prevent practitioners from administering this drug in case of sickness, or to alleviate pain or to cure the habit of using morphine. In other words, its provisions seem to be directed against the named physicians or practitioners with a view of prohibiting them from prescribing or administering these mentioned drugs to habitual users of the same in order to continue their use. The statute was intended to prohibit these practitioners from administering those drugs to those who are addicted to the habit of using them for the purpose of continuing that habit. It does not interdict the administration of these drugs where it is necessary to alleviate pain or to cure the habit. Therefore, if the practitioner administers it to alle-

viate such pain, or uses it in good faith where the party is sick, or as a means of finally curing the habit, it is not within the statutory denunciation.

Under the facts, briefly stated, Maud Smith had been a morphine fiend, addicted to the use of it, and had become emaciated and confined to her bed. Appellant, as physician, administered the morphine for two purposes, first, to relieve her of her present suffering, and, second, to cure her of the habit. The evidence of the woman, Maud Smith, makes it apparent that he succeeded in both. She testified that appellant prescribed morphine, and that she at the time was bedridden; that when she first called appellant in he had to visit her at her house, and treat her for peritonitis and swollen condition of the groins and inflammation of the bowels, and continued sick for some considerable length of time. She was not able to carry her own prescriptions and have them filled. She was not able to get out of bed and her sister frequently went and got the prescriptions filled for her and brought the medicine to her, and she took it according to appellant's direction. He informed her what he was treating her for, and gave her other medicine in addition to morphine. It was a very painful disease she had, and she said her side is not entirely well yet. He performed operations on her; he opened up one of those abscesses on the inside of her somewhere and let out the pus in these places; once on the inside and twice on the outside in the groin at these afflicted places, and it was during that time he gave her the morphine. She says, "Certainly the morphine had the effect of easing the pain while this treatment was going on—that is what he gave it to me for—to ease the pain. I was in that condition for some time and during all of that time Dr. Fyke gave me two different kinds of medicine, as well as performing these operations on me that I have mentioned. I finally got up under his treatment. I am not well yet and I still suffer with those pains, but I am a whole lot better—able to be up all the time. This peritonitis condition on the inside where he opened it and let out this pus, that has been relieved largely and those glands that were affected and the groin have been relieved a whole lot and under his treatment I have practically recovered from these diseases that I have had. At the time that Dr. Fyke began to treat me I did not weigh very much; I was sick in bed and did not weigh very much—not more than seventy-five or eighty pounds." Her present weight is 125 to 126 pounds. She says, "I am not using this drug now. I remember the doctor giving me some medicine that he called the Lambert treatment; it was a kind of reddish-brown medicine. He gave me that medicine before I came before the grand jury; I was taking that when I was up before the grand jury, but I did not know what it was. I am not now using the drug, and Dr. Fyke cured me of the habit. I have sworn that I am not using morphine now, and I am not mistaken about that." The testimony further shows that she has been cured by appellant's treatment of the morphine habit and is not now using this medicine or drug.

Among other things it was offered to be shown by the appellant that

the size of the dose of morphine gradually grew less until it altogether ceased under his treatment. This was excluded, and proper exception reserved. This testimony should have gone before the jury. It bore directly upon the case, and was pertinent to show his good faith in using the morphine to cure the habit of using that drug.

If appellant administered the drug to relieve Maud Smith of the pain from peritonitis and from swollen glands in the groin, not for the purpose of continuing her habit, but for relieving, for the time being, her suffering, in the course of treatment of his patient, it was legitimate and proper. Appellant sought to have this charged to the jury. The court not only refused to do so, but charged the converse of the proposition. This was error. The court charged the jury in this connection, and limited their consideration of the matter to the fact that defendant in prescribing the morphine did so in good faith, deeming it 'necessary for the treatment of the morphine habit. That was one phase of the case. Appellant insisted, and correctly so, that if he gave the medicine to relieve her of pain at the time he was called in, this should not have been made the basis of a conviction. The court further charged the jury: "You can not consider the evidence of the witness Maud Smith, with reference to her physical condition, except for the purpose of showing that the defendant was treating the said Maud Smith for the habit of using morphine; and you are further instructed that you can not consider the evidence of the said Maud Smith to the effect that since the indictment in this case was returned she had quit using morphine, except for the purpose of showing that at the time the defendant gave her the prescription mentioned in the indictment, he did so in good faith, deeming the same necessary for the treatment of said habit of using morphine." This was the court's charge. We think it was erroneous. It applies the law only to curing the woman of her habit of using morphine. Appellant asked the court to instruct the jury that if appellant prescribed morphine for Maud Smith, an habitual user of such drug, as charged in the indictment, but they further find and believe that the said Maud Smith was suffering at the time from a disease known as peritonitis and from another disease described as abscesses in the groin, and that defendant prescribed such in good faith, believing the same to be necessary in the treatment of such diseases, or if they had a reasonable doubt as to whether or not such was the case, it would be the duty of the jury to acquit. This charge should have been given. He also asked the court to charge the jury that if appellant prescribed morphine for the use of Maud Smith, but further find and believe that Maud Smith was suffering at the time from a disease known as peritonitis and from another disease described as abscesses in the groin, and that the defendant prescribed such drug in good faith, believing the same to be necessary in the treatment of such diseases, or if they had a reasonable doubt as to whether or not such was the case, appellant was entitled to the benefit of the doubt and should be acquitted, although they should find and

believe that Maud Smith was an habitual user of said drug. These charges should have been given.

It is unnecessary, we think, to follow up this matter, for under the general view of the statute it was only intended to prevent the prescribing of morphine to a party addicted to the habit. It was not intended to prevent a lawful practitioner of medicine from administering morphine or such drugs if necessary in the treatment of the disease from which a patient is suffering, or to relieve from pain at the time. If appellant, as a lawful practicing physician, administered to his patient, Maud Smith, morphine, who was suffering with peritonitis and those abscesses mentioned, and it was known to defendant, and he did it for that purpose, he would not be violating the statute. Nor would he be guilty of a violation of the statute if, in treating or curing her of the habit itself, he administered it in such way as it assisted in curing the habit. These matters should have been submitted to the jury under the testimony adduced from the State's witness Maud Smith. This treats the statute in a general way. There are a great number of exceptions presenting these matters in different ways as well as exceptions to the ruling of the court, who took the opposite view from that which has been announced as the true purpose and intent of the statute. Upon another trial these matters should be charged to the jury, and they should be plainly told that if appellant administered this drug to relieve Maud Smith's pain, when first called in, and further that he continued to use it in curing the habit, they should not convict him. The evidence seems to be uncontroverted that in his treatment he finally cured her of the habit. That he found her in an emaciated and run down condition, weighing seventy-five or eighty pounds, and had cured her of the habit and her strength had increased until she was up and going about and able to go about and her weight had increased from seventy-five or eighty pounds up to one hundred and twenty-five or one hundred and twenty-six pounds. Without going into details or mentioning all the exceptions or taking them up seriatim, this is the general view which we think to be correct, and these matters will be observed upon another trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*